IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

04 MAR 30 PM 4: 15

SONJA LUJAN, and
RONALD AHLIN,

    Plaintiffs,

vs.                                        No. CIV 04-0057 RB/RLP

D.R. HORTON, INC., a New Mexico
Corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Stay Plaintiffs' Suit and Compel Arbitration (Doc. No. 2), filed on January 21, 2004. The Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1367(a). Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is not well-taken and should be denied.

### I. Background

On December 8, 2003, Plaintiffs filed a joint complaint in the Second Judicial District for the State of New Mexico. Plaintiffs alleged discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-34. Plaintiffs also alleged claims under the New Mexico Human Rights Act (NMHRA), N.M.STAT.ANN. §§ 28-1-1 to 15. In accordance with 28 U.S.C. §§ 1441(b) and 1446(a), Defendant removed the cause of action to this Court. Pursuant to §§ 3 and 4 of the Federal Arbitration Act (FAA), Defendant moves to stay Plaintiffs' suit and compel arbitration, respectively. *See* 9 U.S.C. §§ 3 & 4.



## II. Facts

Defendant, D.R. Horton, Inc. (hereinafter "Horton") is engaged in the business of building and selling real estate. Doc. No. 1; Def.'s Notice of Removal; Def.'s Ex. A ¶ 3. Plaintiffs were previously employed by Horton as real estate sales personnel. *Id.* According to Plaintiffs, they were extremely successful in their profession. *Id.* However, Plaintiffs claim, despite their success, Horton did not provide them with the same support it provided to younger real estate sales personnel. *Id.* ¶ 4. Plaintiffs also claim Horton's management personnel frequently commented on Plaintiffs' ages, noting Horton needed "young blood" on its sales staff. *Id.* Plaintiffs also claim Horton imposed an unreasonable sales requirement in order to create a pretext for discharging them. *Id.* As a result of failing to meet Horton's sales goals, Plaintiffs were terminated. Doc. No. 2; Def.'s Mot. to Stay Pl.'s Suit and Compel Arbitration.

At the time Horton hired Plaintiffs, they executed a written employment agreement. *Id.* Def.'s Ex. A- C. The employment agreement did not discuss the issue of arbitration. Doc. No. 6; Def.'s Reply in Supp. of Mot. to Stay Pl.'s Suit and Compel Arbitration 3 ¶ 4. After executing the written agreement, Plaintiffs received an acknowledgment form. Doc. No. 2; Def.'s Mot. to Stay Pl.'s Suit and Compel Arbitration ¶ 2. The acknowledgment form requires all disputes arising out of Plaintiffs' employment to be resolved by arbitration. *Id.* ¶ 3. The acknowledgment form requiring arbitration provides in pertinent part:

> In the event there is [sic] any disputes arising out of your employment with D.R. Horton Inc., or the termination thereof, which the parties are unable to resolve through direct discussion or mediation, regardless of the kind or type of dispute, you and D.R. Horton, Inc. agree to submit all such disputes exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act, or, if applicable, any applicable state arbitration statute, or any successor or replacement statute, upon request in writing to the legal department in the corporate office within one (1) year of the termination of the employment, whichever occurs first.

*Id.* ¶ 4; Def.'s Mot. to Stay and Compel Arbitration Ex. D & G.

2

Moreover, the acknowledgment form ended with this language: "I agree, as shown by my signature, to accept, endorse and abide by all Company policies and procedures and to arbitrate any disputes." *Id.* ¶ 5; Def.'s Ex. D-G. Plaintiffs signed and returned the acknowledgment forms to Horton. *Id.* ¶ 2. However, Plaintiffs did not seek to arbitrate their dispute, but rather filed their cause of action in the Second Judicial District of New Mexico. Doc. No. 1; Def.'s Notice of Removal.

### III. Discussion

The congressional intent behind the enactment of FAA was "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). An arbitration agreement must be evaluated in light of the strong federal and state policy favoring arbitration agreements. *See id.* at 25. Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). The party contesting arbitration bears the burden of proving that arbitration should not apply. *See Gilmer*, 500 U.S. at 26. "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

However, "an arbitration clause is enforceable and valid unless there are legal or equitable grounds for revoking it." *Shaw v. Kuhnel & Assoc., Inc.*, 102 N.M. 607, 608, 698 P.2d 880, 881 (1985) (superseded by statute on other grounds as stated in *Aguilera v. Palm Harbor Homes, Inc.*, 132 N.M. 715, 54 P.3d 993 (2002)). In fact, "[t]he presumption in favor of

3

arbitration ... disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the court. *Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 797 (10th Cir. 1995) (citing *Mitsubishi*, 473 U.S. at 626). State law principles of contract formation govern the determination of whether an agreement to arbitrate has been reached. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). In order for there to be an enforceable arbitration agreement in New Mexico, "it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Heye v. American Golf Corp.*, 134 N.M. 558, 561, 80 P.3d 495, 498 (Ct. App. 2003).

Plaintiffs argue that the agreement to arbitrate is unenforceable for the following reasons: (1) the written employment agreement did not provide for arbitration; (2) the agreement requiring arbitration is illusory; and (3) the alleged arbitration agreement is unconscionable. Because the Court finds that the arbitration agreement is illusory, Plaintiffs' remaining arguments are not considered.

Plaintiffs contend the agreement requiring arbitration is illusory because it allows Defendant the unilateral right to alter the arbitration agreement's existence or scope. Under New Mexico law, an arbitration agreement allowing one party the unilateral right to alter the arbitration agreement's existence is illusory. *Heye*, 134 N.M. at 560, 80 P.3d at 499. In *Heye*, the New Mexico Court of Appeals rejected appellant's request to reverse the trial court's order denying its motion to compel arbitration. *Id.* at 561, 500. Central to the trial court's decision was the fact that appellant retained the ability to modify the arbitration agreement without appellee's consent. *Id.* Appellant argued: (1) the strong presumption favoring arbitration required the trial court to overlook the arbitration agreement's illusory nature; and (2) the

4

continued employment after appellee signed the arbitration clause furnished adequate consideration for the arbitration agreement to constitute a binding contract. *See id.* at 559, 498.

Not persuaded, the New Mexico Court of Appeals affirmed, adopting the Tenth Circuit Court's reasoning in *Dumais*, 299 F.3d at 1219. In *Dumais*, the Tenth Circuit accepted an invitation to "join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Id.* Moreover, the *Heye* court, agreeing with the Tenth Circuit in *Dumais*, found particularly troubling the lack of mutuality of obligation between appellee and appellant. The appellee, in *Heye*, remained bound by the arbitration agreement while appellant reserved the "right to amend, supplement, rescind or revise any policy, practice, or benefit described in this handbook" *Heye*, 134 N.M. at 561, 80 P.3d at 500. The *Heye* court noted "[w]hen a promise puts no constraints on what a party may do in the future--in other words, when a promise, in reality, promises nothing--it is illusory . . . ." *Id.* at 560, 499.

Applying the principles in *Heye* to the present case, the Court finds the arbitration agreement illusory in that it allows Horton the option of changing the arbitration provision at will. The relevant provision of the agreement states:

> Since the information, policies, and benefits described here are subject to change, I acknowledge that revisions to the handbook may occur. All such changes will be communicated through official notices, and I understand that revised information may supersede, modify, or eliminate existing policies. Only members of the Executive Committee of D.R. Horton Inc. have the ability to adopt any revisions to the policies in this handbook.

Def.'s Mot. to Stay and Compel Arbitration Ex. D & G.

The arbitration agreement here is a preprinted form drafted by Horton. *See id.* The parties' submissions establish that Plaintiffs did not assist Horton in drafting its language. (Doc. No. 1-6) Accordingly, the Court will construe any ambiguities in the arbitration agreement against Horton

5

as the drafter. *See Western Farm Bureau v. Carter*, 127 N.M. 186, 187, 979 P.2d 231, 232 (1999). As in *Heye*, the arbitration agreement gives Horton the unilateral right to alter the arbitration agreement at any time, while simultaneously binding Plaintiffs. The agreement expressly reserves the right to "modify or eliminate existing policies." Def.'s Mot. to Stay and Compel Arbitration Ex. D & G.

Horton argues that it does not have the unfettered right to modify its policies because its ability to modify its employment policies is expressly contingent upon its executive committee adopting the proposed revisions. Horton's argument is not persuasive. The executive committee is comprised of Donald R. Horton, Don Tomnitz and Sam Fuller. Pls.' Resp. Ex. 2. Apparently, at-will employees are not represented in determining what proposals are adopted. The arbitration agreement allows Horton free rein to selectively abide by its promise to arbitrate. Thus, Horton's promise to arbitrate does not provide the mutuality of obligation necessary to enforce the arbitration agreement.

To shore up its position, Horton points to *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3rd Cir. 2002) and claims that the arbitration agreement at issue here is identical to the arbitration agreement endorsed in *Blair*. However, the arbitration agreement in *Blair* is distinguishable. First, the arbitration agreement provider in *Blair* was only authorized to make unilateral changes to non-material aspects of the handbook. *Id.* While not speculating as to whether a modification to the arbitration agreement was material or non-material, by defining material as "[b]eing both relevant and consequential," the *Blair* court implied that a non-material change did not include the alteration of the arbitration agreement. *See id.* (quoting the American Heritage College Dictionary 837 (3d ed.1993)). Second, unlike here, the arbitration agreement, in *Blair*, required the provider to: (1) put all changes in writing, (2) provide a copy of the changes

6

to the employees, and (3) allow the employees to consent to the changes by continuing employment. *Id.*

## IV. Conclusion

Horton's motion to stay Plaintiffs' suit and compel arbitration should be denied. The arbitration agreement allows Horton the unilateral right to alter the arbitration agreement's existence and scope. Accordingly, the Court finds the arbitration agreement illusory.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Stay Plaintiffs' Suit and Compel Arbitration (Doc. No. 2), filed on January 21, 2004, is **DENIED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**