**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**SONJA LUJAN, and**
**RONALD AHLIN,**

      **Plaintiffs,**

**vs.**                                                                                              **No. CIV 04-0057 RB/RLP**

**D.R. HORTON, INC., a New**
**Mexico Corporation,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's (Horton's) Motion for Summary Judgment on Plaintiff Ahlin's Liability and Willfulness Claims (Doc. 54), Motion for Summary Judgment on Plaintiff Lujan's Liability and Willfulness Claims (Doc. 52), Motion for Partial Summary Judgment on Ahlin's Damages Claims (Doc. 48), and Motion for Partial Summary Judgment on Lujan's Damages Claims (Doc. 49), filed on February 28, 2005. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1367(a). Having considered the submissions of the parties, relevant law, and being otherwise fully advised, I find that these motions should be denied.

**I. Background.**

Horton is a major builder and seller of homes in Albuquerque, New Mexico. In November 2001, Kathryn Rhoades, Horton's Sales Manager, hired Ms. Lujan as a

salesperson. (Rhoades Aff. for Lujan Mot. ¶ 3.) Ms. Lujan had worked in residential real estate since 1996 and had represented several large Albuquerque homebuilders. (Lujan Aff. ¶ 2.) In 2002, Ms. Lujan received a "Gold Million Dollar Circle Award" from the National Homebuilders Association in recognition for selling $5.3 million in homes for Horton. (Lujan Aff. ¶ 2.) In 2003, Ms. Lujan was 64 years old. (Rhoades Aff. for Ahlin Mot., Ex. 15.)

Mr. Ahlin has 39 years of experience in residential home sales and sales management. (Ahlin Aff. for Ahlin Mot. ¶ 2.) Mr. Ahlin was employed by Horton from 1997 until he was terminated on September 2, 2003. (*Id*.) In January 2000, Horton hired Ms. Rhoades to replace Mr. Ahlin as Sales Manager. (Rhoades Aff. for Ahlin Mot. ¶ 3.) At times, Ms. Rhoades assigned Mr. Ahlin to work as a salesperson in subdivisions that were difficult to sell. (Rhoades Aff. for Ahlin Mot. ¶ 26.) From January 2001 until his termination, Mr. Ahlin worked as a salesperson for Horton. (*Id*.) In 2003, Mr. Ahlin was 65 years old. (Rhoades Aff. for Ahlin Mot., Ex. 15.)

In early 2002, Ms. Rhoades assigned Ms. Lujan to sell houses in La Scala, a gated subdivision within the Ventana Ranch on the west side of Albuquerque. (Rhoades Aff. for Lujan Mot. ¶¶ 3, 4, and 8.) Ventana Ranch is a master planned community of approximately 940 acres with multiple subdivisions built by a variety of builders. (Rhoades Aff. for Lujan Mot. ¶ 9.) La Scala is on the north side of Paradise Boulevard, a road with high vehicular traffic volume. (Rhoades Aff. for Lujan Mot. ¶ 10.) While at La Scala, Ms. Lujan averaged 4.4 net house sales per month. (Rhoades Aff. for Lujan Mot. ¶ 11.) Rhoades was satisfied

with Ms. Lujan's performance during that period. (*Id.*)

As the last houses were sold in La Scala, Rhoades informed Ms. Lujan that Rhoades planned to assign Ms. Lujan to Vittoria, a new Horton subdivision in Ventana Ranch, located directly across Paradise Boulevard from La Scala. (Rhoades Aff. for Lujan Mot. ¶ 12.) Ms. Lujan told Ms. Rhoades that she was pleased to be assigned to Vittoria and both Ms. Lujan and Ms. Rhoades anticipated that Ms. Lujan would perform very well there. (Rhoades Aff. for Lujan Mot. ¶ 12.)

In December 2002, Ms. Rhoades assigned Mr. Ahlin to join Ms. Lujan at La Scala and Vittoria. (Rhoades Aff. for Ahlin Mot. ¶ 4; Lujan Aff. ¶ 6.) At that time, La Scala was nearly sold out. (Ahlin Aff. ¶ 6; Lujan Aff. ¶ 6.) Ms. Lujan and Mr. Ahlin sold the last eight homes that were available for sale in La Scala. (*Id.*) At Vittoria, the sales prices were not established and no lots were released for sale until March, 2003. (*Id.*) In March 2003, twenty-five lots were released for sale in Vittoria. (*Id.*)

While working in residential sales, Ms. Lujan and Mr. Ahlin became familiar with the concept of "sales traffic," meaning the number of potential buyers stopping at a particular subdivision to consider purchasing new homes. (Ahlin Aff. ¶ 3; Lujan Aff. ¶ 3.) When Ms. Lujan started at La Scala in 2002, sales traffic was very slow for the first several months, and then it increased dramatically. (Lujan Aff. ¶ 3.)

Between March and September 2003, the sales traffic at Vittoria was significantly slower than Ms. Lujan and Mr. Ahlin had observed while working in other communities. (Ahlin Aff. ¶ 3; Lujan Aff. ¶ 3.) Until May 2003, there were no streets in Vittoria to

accommodate normal passenger vehicles. (Ahlin Aff. ¶ 7; Lujan Aff. ¶ 7.) Other problems in Vittoria included the absence of model homes, inadequate signs, and insufficient indications that a new community existed. (*Id.*) Ms. Lujan and Mr. Ahlin were expected to sell potential homes at Vittoria out of models in La Scala. (Rhoades Aff. for Lujan Mot. ¶ 22.)

From the period March 2003 through July 2003, Mr. Ahlin only had 11 net sales. (Rhoades Aff. for Ahlin Mot. ¶ 18.) During the period March 2003 through July 2003, Ms. Lujan only had 7.5 net sales. (Rhoades Aff. for Lujan Mot. ¶ 18.) Ms. Rhoades discussed poor sales performance with Ms. Lujan and Mr. Ahlin on a number of occasions. (Rhoades Aff. for Ahlin Mot. ¶ 18; Rhoades Aff. for Lujan Mot. ¶ 20.) Ms. Rhoades visited Vittoria a number of times and found that, in her opinion, traffic was good and signs were adequate. (Rhoades Aff. for Lujan Mot. ¶ 22.)

On July 21, 2003, Ms. Rhoades completed a performance appraisal for Mr. Ahlin. (Ahlin Ex.1.) Ms. Rhoades rated Mr. Ahlin as "outstanding" in the categories of reliability and attendance; "very good" in the categories of independence, adherence to policy, and judgment; "good" in the categories of quality, job knowledge interpersonal relations; "improvement needed" in the categories of creativity and initiative; and "unsatisfactory" in the category of productivity. (*Id.*) Ms. Rhoades assessed Mr. Ahlin an overall rating of "good." (*Id.*)

With respect to productivity, Ms. Rhoades noted that "Ron needs to sell a minimum requirement of four homes per month. Sales last 9 months 21. Last 4 months 8." (Ahlin Ex.

1.) Ms. Rhoades wrote that Mr. Ahlin's sales volume was unacceptable and that he needed to net one sale per week to continue employment with Horton. (*Id.*) Mr. Ahlin commented that the expectation for Vittoria was set too high in the beginning, the traffic did not match the expectation, the models and specs were being sheet-rocked, and there had been a five week hold on everything. (*Id.*)

On July 21, 2003, Ms. Rhoades completed a performance appraisal for Ms. Lujan. (Lujan Ex. 4.) Ms. Rhoades rated Ms. Lujan as "outstanding" in the categories of reliability, attendance, adherence to policy, and interpersonal relationships; "good" in the category of quality; "improvement needed" in the categories of job knowledge, independence, initiative and judgment; and "unsatisfactory" in the category of productivity. (*Id.*) Ms. Rhoades noted that Ms. Lujan's sales contracts required close review, her knowledge of mortgages and contract rewrites was insufficient, and she was afraid to make mistakes. ( Rhoades Aff. for Lujan Mot. ¶29; Def. Ex. J.) Ms. Rhoades assessed Ms. Lujan an overall rating of "good." (*Id.*)

Ms. Rhoades noted that "Sonja has sold 21 homes in nine months and only sold 8 in the last 4 months. Minimum requirement is one per week." (Lujan Ex. 4.) Ms. Rhoades wrote that Ms. Lujan needed to sell one net home per week to continue employment with Horton. (*Id.*) Ms. Lujan commented that she was unable to sell a product that was not on the ground, she would like more lots released for sale, and she only had one lot available to sell on that day. (*Id.*) Horton released fifteen more lots for sale at Vittoria on July 23, 2003. (Rhoades Aff. for Lujan Mot. ¶ 28.)

5

On July 22 or 23, 2003, Ms. Lujan had a conversation with David Burke, a Horton employee involved in construction at Vittoria, about progress on the model homes at Vittoria. (Def. Ex. A at 61-62.) Burke informed Ms. Lujan that the models would be finished by the end of August 2003, but that Ms. Lujan and Mr. Ahlin "would never see the insides" of the models. (*Id.*) Later that day, Burke met with Ms. Lujan and Mr. Ahlin at La Scala to discuss construction delays. (Def. Ex. A at 62-63.) Burke stated that Richard Murphy, Horton's Construction Manager and Burke's supervisor, had said that Horton was looking for "younger blood." (Def. Ex. A at 63-65.)

Ms. Lujan and Mr. Ahlin knew that Horton had a sales goal of one net house sale per week per salesperson. (Ahlin Aff. ¶ 5; Lujan Aff. ¶ 5.) However, prior to July 21, 2003, Horton never informed them that failure to meet that goal would result in termination. (*Id.*) Other salespersons employed by Horton failed to meet the sales goal on numerous occasions. (Ahlin Aff. ¶ 5; Lujan Aff. ¶5.) For the period August 2000 through August 2003, at least eight Horton salespersons failed to meet the sales goal for nine or more consecutive months. (*Id.*) None of the other salespersons were terminated involuntarily. (*Id.*)

When Ms. Lujan did not sell houses after the July 21, 2003 evaluation, Ms. Rhoades decided to terminate her. (Rhoades Aff. for Lujan Mot. ¶ 31.) Mark Ferguson, Division President, concurred with the decision. (Rhoades Aff. for Lujan Mot. ¶ 32.) Ms. Rhoades terminated Ms. Lujan on August 21, 2003 for the stated reason of poor sales performance. (*Id.*)

During the six weeks following his July 21, 2003 evaluation, Mr. Ahlin sold the

6

equivalent of one half of a house because he shared a sale with another salesperson. (Rhoades Aff. for Ahlin Mot. ¶ 33.) Ms. Rhoades consulted with Mr. Ferguson and decided to terminate Mr. Ahlin. (Rhoades Aff. for Ahlin Mot. ¶ 34.) Ms. Rhoades terminated Mr. Ahlin effective September 2, 2003 for the stated reason of poor sales performance. (*Id.*) Horton replaced Ms. Lujan and Mr. Ahlin with substantially younger salespersons; Kendra Kokulis, age 33, and Dennis Romero, age 32. (Pl. Exs. 1 and 8.)

Ms. Lujan and Mr. Ahlin filed administrative charges of age discrimination. On December 3, 2003, Ms. Lujan and Mr. Ahlin filed a complaint in state court alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.*, and the New Mexico Human Rights Act ("NMHRA"), NMSA § 28-1-1, *et seq.* Horton removed the case to federal court on January 21, 2004. The New Mexico Department of Labor issued a non-determination letter on Ms. Lujan's administrative claim on March 1, 2004, (Lujan Ex. 2), and a non-determination letter on Ahlin's administrative claim on March 14, 2004. (Ahlin Ex. 2.)

**II.   Summary Judgment Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221

F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).  The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter.  *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

**III.  Discussion.**

Both the NMHRA and the ADA prohibit employment discrimination on the basis of age.  *See* 29 U.S.C. § 623(a)(1) and NMSA 1978, § 28-1-7(A).[1]  Plaintiffs alleging age discrimination may prove intentional discrimination through either direct evidence (e.g., oral

---

[1] The analytical framework used for ADEA claims has been applied to claims brought under the NMHRA, and terms in both statutes have been used interchangeably.  *See Ocana v. American Furniture Co.*, 135 N.M. 539, 549, 91 P.3d 58, 68 (2004).  Thus, the analysis pertaining to the ADEA claim is applicable to the NMHRA claims.

8

or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1219 n. 5 (10th Cir. 2002). Cases involving indirect evidence are subject to the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

Plaintiffs relying on indirect evidence have the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802-804. Once the prima facie case is established, a presumption of discrimination arises and the employer has the burden to produce a "legitimate, nondiscriminatory reason" for its action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the employer proffers a legitimate reason, the employees must prove, by a preponderance of the evidence, that the employer's explanation is merely a pretext for unlawful discrimination. *Id*. 530 U.S. at 143.

In order to establish a prima facie case of discriminatory termination, employees must show that they were: (1) within the age group protected by the ADEA when they were terminated, (2) performing their jobs satisfactorily, (3) discharged, and (4) replaced by substantially younger persons. *Miller v. Eby Realty Group LLC,* 396 F.3d 1105, 1111 (10th Cir. 2005).

Horton concedes that Ms. Lujan and Mr. Ahlin were within the protected class, were discharged, and were replaced by substantially younger workers. Horton argues that Ms. Lujan and Mr. Ahlin were not performing their jobs in a satisfactory manner because they failed to meet the minimum sales requirement.

Horton relies on poor sales performance as its proffered legitimate, non-discriminatory reason for terminating Ms. Lujan and Mr. Ahlin. When an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000). At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant. *Id.*

Plaintiffs may establish the second element of the prima facie case in a discriminatory discharge case by (1) evidence that they continued to possess the objective qualifications that they held when they were hired, (2) their own testimony that their work was satisfactory, or (3) evidence that they held their positions for significant periods of time. *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991).

Ms. Lujan and Mr. Ahlin testified in their depositions that their performance was satisfactory given the circumstances at Vittoria. Both Plaintiffs held their positions for significant periods of time. Both Plaintiffs received good performance evaluations shortly before they were terminated. The evidence, construed in the light most favorable to Plaintiffs, demonstrated that Ms. Lujan and Mr. Ahlin were performing their jobs satisfactorily. Because Horton does not dispute the other elements of the prima facie case, Ms. Lujan and Mr. Ahlin have set out a prima facie case of age discrimination.

Once the plaintiffs carry their burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action. *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). Horton states that it terminated Ms. Lujan and Mr. Ahlin because they failed to meet their sales goals. At step two, the defendant need only advance a facially non-discriminatory reason for its action against the plaintiff. *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992). It is undisputed that Plaintiffs did not meet their sales goals from January 2003 until they were terminated. Horton has satisfied its production burden.

After the defendant satisfies its burden, the burden shifts back to the plaintiffs to proffer evidence that the employer's reason was pretextual. *McDonnell Douglas*, 411 U.S. at 804. "A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable fact finder could rationally find them unworthy of credence." *Garrett*, 305 F.3d at 1217. A showing that the employer's justifications for its behavior are pretextual permits a finding of intentional discrimination, but does not compel it. *Reeves*, 530 U.S. at 146-47. Horton argues that Ms. Lujan and Mr. Ahlin are unable to demonstrate pretext.

The record indicates that eight houses were left for sale in La Scala and twenty-five lots were released for sale in Vittoria during the thirty-two weeks between December 2002 and July 2003, for a total of thirty-three potential sales. In order to meet the sales requirement, Ms. Lujan and Mr. Ahlin needed to sell a total of sixty-four houses. Thus, it

was mathematically impossible for both Ms. Lujan and Mr. Ahlin to meet the sales requirement imposed by Horton. Other poorly performing salespersons were not terminated. Ms. Lujan and Mr. Ahlin received good performance appraisals less than six weeks before they were terminated. From the evidence, considered in the aggregate and construed in the light most favorable to Ms. Lujan and Mr. Ahlin, a reasonable jury could conclude that Horton's proffered explanation for terminating Plaintiffs is pretextual. Ms. Lujan and Mr. Ahlin have produced sufficient evidence to preclude summary judgment on the age discrimination claims.

Horton argues that summary judgment should be granted on Plaintiffs' liquidated damages claim. The ADEA provides that liquidated damages shall be payable only in cases of willful violation. *See* 29 U.S.C. § 626(b). To prove willful discrimination, the plaintiff must establish that the "employer either knew or showed reckless disregard" as to whether its conduct violated the ADEA. *Miller,* 396 F.3d at 1115.

Horton had an anti-discrimination policy in place and was aware that age discrimination was unlawful. If the jury finds that Horton's proffered reason for the terminations is unworthy of credence and that Horton discriminated against Ms. Lujan and Mr. Ahlin in violation of the ADEA, it could find that the violation was willful. *See Minshall v. McGraw Hill Broadcasting Co., Inc.*, 323 F.3d 1273, 1283 (10th Cir. 2003). Ms. Lujan and Mr. Ahlin have presented evidence from which a reasonable jury could conclude that Horton either knew or showed reckless disregard as to whether its conduct violated the ADEA. Thus, Horton is not entitled to summary judgment on the liquidated damages claims.

Horton asserts that the NMHRA claims are barred for failure to exhaust administrative remedies and that this Court lacks jurisdiction over the NMHRA claim. The record establishes that both Plaintiffs exhausted their administrative remedies. This Court has supplemental jurisdiction over the state law claims. *See* 28 U.S.C. §§ 1331 and 1367(a). Indeed, Horton acknowledged jurisdiction when it removed the case. The motions for summary judgment on the liability and willfulness claims will be denied.

Horton moves for partial summary judgment on Plaintiffs' damages claims for emotional distress damages, back pay, front pay, and lost fringe benefits. Horton further argues that any damage award should be offset by unemployment compensation benefits. Unemployment compensation benefits are generally not offset against back pay awards. *See E.E.O.C. v. Sandia Corp.*, 639 F.2d 600, 624-25 (10th Cir. 1980). Damages for emotional distress are recoverable under the NMHRA. *Nava v. City of Santa Fe,* 136 N.M. 647, 653, 103 P.2d 571, 577 (2004). Back pay, front pay, and fringe benefits are recoverable under the ADEA. *See Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1179 (10th Cir. 2003). Ms. Lujan and Mr. Ahlin specified in discovery responses that they request damages for emotional distress, back pay, front pay, and loss of benefits. If properly proven at trial, Ms. Lujan and Mr. Ahlin may recover such damages. Horton's motion for partial summary judgment will be denied. However, Horton may challenge the adequacy of proof of damages at trial.

**WHEREFORE,**

    **IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff

Ahlin's Liability and Willfulness Claims (Doc. 54), Motion for Summary Judgment on Plaintiff Lujan's Liability and Willfulness Claims (Doc. 52), Motion for Partial Summary Judgment on Ahlin's Damages Claims (Doc. 48), and Motion for Partial Summary Judgment on the Lujan's Damages Claims (Doc. 49), filed on February 28, 2005, are **DENIED**.

*Robert Brack*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**